## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **CAROLYN TURNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-20-628-STE** |
| | ) | |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.[1]** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's applications for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

---

[1]  Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.      PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's applications for benefits. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 12-25). The Appeals Council denied Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II.     THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. §§ 404.1520 & 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since January 1, 2016, the alleged onset date. (TR. 15). At step two, the ALJ determined Ms. Turner suffered from the following severe impairments: multi-level osteophytes and spondylitis of the lumbar spine, depressive disorder and posttraumatic stress disorder. (TR. 15). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15).

At step four, the ALJ concluded that Ms. Turner retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can perform simple tasks with routine supervision, can relate to supervisors and peers on a superficial work basis, can adapt to a work situation, but cannot relate to the general public.

(TR. 17).

With this RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a kitchen helper as actually performed at the light exertional level. (TR. 23). Even so, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 58-59). Given the limitations, the VE identified three jobs from the Dictionary of Occupational Titles. (TR. 59). Thus, at step five, the ALJ adopted the VE's testimony and made alternative findings, concluding that Ms. Turner was not disabled based on her ability to perform the identified jobs. (TR. 24).

## III.   ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) error in the evaluation of medical evidence and opinions; (2) a violation of Due Process; and (3) error in the ALJ's evaluation of Plaintiff's subjective allegations. (ECF Nos. 22:6-15; 29:4-10).

## IV.   STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Commissioner, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). Under the "substantial evidence" standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence … is more than a mere scintilla … and means only—such relevant evidence as a reasonable mind might accept as adequate to support

a conclusion." *Biestek v. Berryhill*, 139 S. Ct. at 1154 (internal citations and quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V.     PLAINTIFF'S FIRST PROPOSITION

In her first point of error, Plaintiff states: "The ALJ failed to properly discuss and weigh all medical and opinion evidence, critically flawing her determinations at Steps 2 through 5." (ECF No. 22:7) Under the rubric of this proposition, Ms. Turner alleges: (1) error at step two; (2) error in the consideration of medical opinions and evidence from two physicians; (3) error in failing to perform a function-by-function analysis in formulating the RFC; (4) error in failing to consider the impacts of Plaintiff's lack of proper medical care, loss of housing, and inability to afford treatment or medication; and (5) error in failing to consider medication side effects. (ECF No. 22:6-13). The Court finds no merit to Plaintiff's arguments.

### A.     Step Two

Plaintiff alleges the ALJ "ignored medical records information to support her conclusion that Claimant's severe anemia, intractable high blood pressure, degenerative

bone disease, and chronic back pain were non-severe." (ECF No. 22:10-11).[2] The Court finds no reversible error at step two.

At step two, the issue is whether the claimant suffers from at least one "severe" medically determinable impairment. *See Dray v. Astrue,* 353 F. App'x 147, 149 (10th Cir. 2009). "[S]tep two is designed 'to weed out at an early stage of the administrative process those individuals who cannot possibly meet the statutory definition of disability.' " *Id.* (quoting *Bowen v. Yuckert,* 482 U.S. 137, 156, (1987) (O'Connor, J., concurring)). In circumstances where an ALJ deems at least one impairment severe, and proceeds to the remaining steps of the evaluation, any error at step two in failing to deem a certain impairment severe is considered harmless. *See Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (stating that "any error [at step two] became harmless when the ALJ reached the proper conclusion that [the plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.").

At step two, the ALJ determined that Ms. Turner suffered from "severe" multi-level osteophytes and spondylitis of the lumbar spine, depressive disorder and posttraumatic stress disorder. (TR. 15). Following the step two findings, the ALJ continued to perform the five-step sequential disability evaluation as it pertained to Ms. Turner. (TR. 15-25). Thus, any error in the ALJ's failure to conclude that Plaintiff's anemia, intractable high

---

[2]   Ms. Turner also alleges that the ALJ failed to "discuss the functional impacts caused by [Plaintiff's] severe anemia." (ECF No. 22:5, 9). But the Court finds no evidence that Plaintiff's anemia caused work-related functional limitations, and indeed Plaintiff seems to concede the point, as evidenced by her statement elsewhere that "Claimant's medical record contains medical signs and tests but contains no medical assessment opining the functional impacts caused by chronic and severe low anemia[.]" (ECF No. 22:3).

blood pressure, degenerative bone disease, and chronic back pain were severe, was

harmless. *See supra*.[3]

### B.      Consideration of Medical Opinions

Ms. Turner alleges error in the ALJ's failure to properly evaluate opinion evidence

from Dr. Sidney Williams and Dr. Suzan Simmons.

### 1.      ALJ'S Duty to Evaluate Medical Opinions

Regardless of its source, the ALJ has a duty to evaluate every medical opinion in

the record. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). For claims filed

after March 27, 2017, such as Ms. Turners',[4] 20 C.F.R. §§ 404.1520c & 416.920c provide

that the Commissioner no longer will "defer or give any specific evidentiary weight,

including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) &

416.920c(a). Instead, the ALJ need only articulate how persuasive she finds the medical

opinion.  20  C.F.R.  §§ 404.1520c(b)  &  416.920c(b). Persuasiveness  is  determined

primarily by an opinion's supportability and consistency, and the ALJ must explain how

---

[3] Plaintiff also alleges that "[t]he omission of significant impairments at Step 2 reflects the ALJ's failure to adequately consider and discuss at subsequent Steps the significant probative evidence needed to assess a disability claim. This causes direct legal error that requires remand as diagnoses are required to be included in all Steps of an ALJ's determination." (ECF No. 22:11). In support, Plaintiff cites *Carpenter v. Astrue*, 537 F.3d 1264, 1265-1266 (10th Cir. 2008). Plaintiff's reliance on *Carpenter* is misplaced. In Carpenter, the Court cited the oft-quoted principle that "[a]t step two, the ALJ must consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]." *Carpenter*, 537 F. 3d. at 1266. Ultimately, however, the Court in *Carpenter* found any error at step two harmless based on the fact that the ALJ concluded that the claimant suffered from one severe impairment and continued on through the sequential analysis. Furthermore, the Tenth Circuit has stated that "[t]he mere diagnosis of a condition does not establish its severity or any resulting work limitations." *Paulsen v. Colvin*, 665 F. App'x 660 2016 WL 6440368 at *4 (10th Cir. 2016).

[4] *See* TR. 12.

she considered those factors. 20 C.F.R. §§ 404.1520c(b)(2) & (c)(1)-(2); 416.920c(b)(2) & (c)(1)-(2).  In addition, the ALJ may, but is not required to, discuss other considerations that may bear on the persuasiveness of a medical opinion, such as the relationship of the source to the claimant, the source's area of specialization, and other factors such as the source's familiarity with the disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(c)(3)-(5) & 416.920c(c)(3)-(5). The ALJ's rationale must be "sufficiently specific" to permit meaningful appellate review. *See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Additionally, the ALJ may not selectively review any medical opinion and must provide a proper explanation to support his findings. *See Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) ("We have repeatedly held that [a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects."); And if the ALJ rejects an opinion completely, he must give "specific, legitimate reasons" for doing so. *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal citations omitted).

### 2.    No Error in the Consideration of Evidence from Drs. Williams and Simmons

Plaintiff alleges: (1) the ALJ "failed to discuss opinion evidence from Drs. Simmons and Williams regarding Claimant's fatigue and pain as well as medical assessments showing positive straight leg results and mild cognitive disorder" and (2) the ALJ erred in

failing to "recognize that Dr. Simmons's assessment of Claimant's moderate concentration problems, moderate social problems, and co-occurring fatigue and pain limitations would result in moderate problems with being consistent and persistent." (ECF No. 22:7-8). The Court finds no error.

### Dr. Williams

Upon examination, Dr. Williams noted: (1) a "positive straight-leg" finding on Plaintiff's right side, both in a sitting and lying position, and (2) that Plaintiff suffered from chronic pain syndrome, as well as back and knee pain. (TR. 605, 609). Ms. Turner alleges the ALJ erred in her consideration of this evidence.[5] The Court disagrees.

Regarding the positive straight leg finding, Plaintiff alleges that it "supported potential nerve root impingement," and the ALJ failed to: (1) discuss this finding and (2) "provide a proper discussion of carrying, pushing, and pulling limits caused by Claimant's severe back pain and evidence of nerve root impingement demonstrated by a positive straight leg raise finding." (ECF No. 22:7). Ms. Turner's argument hinges on three presumptions—first, that the positive straight leg test finding supported a potential nerve root impingement, second, that the nerve root impingement caused her back pain and third, that the pain caused her to suffer limitations in her abilities to carry, push, or pull. Two problems undermine Plaintiff's arguments.

---

[5] Although Plaintiff alleged that the ALJ "failed to discuss opinion evidence from Drs. Simmons and Williams regarding Claimant's fatigue and pain as well as medical assessments showing positive straight leg results and mild cognitive disorder," Dr. Williams did not make findings regarding Plaintiff's fatigue or cognitive disorder. *See* TR. 603-609.

First, nowhere in Dr. Williams' report did the physician opine that the positive straight leg test result provided evidence of a nerve root impingement, was the source of Plaintiff's back pain, or had resulted in limitations in Plaintiff's ability to carry, push, or pull. *See* TR. 603-609. Second, in her summary of Dr. Williams' examination, the ALJ *did* discuss the positive straight leg test findings,[6] but she had no duty to specifically "discuss and weigh" the finding under 20 C.F.R. §§ 404.1520c & 416.920c, because the finding did not constitute a "medical opinion." *See Moua v. Colvin*, 541 F. App'x 794, 797 (10th Cir. 2013) ("Dr. Bhakta's treatment notes do not offer any medical opinions concerning [the plaintiff's] abilities or limitations.. . . Thus, there was no pertinent medical opinion for the ALJ to weigh."); *see also Larsen v. Comm'r of Soc. Sec.*, No. CIV-18-328-R, 2018 WL 4997916, at *6 (W.D. Okla. Sept. 21, 2018) (finding "none of the[ ] [physician's] observations constitute a 'medical opinion' " and the examiner "did not identify any functional limitations that would result from [the] physical impairments"), *adopted*, 2018 WL 4976814 (W.D. Okla. Oct. 15, 2018); *see also Giroux v. Berryhill*, No. CIV-17-139-STE, 2017 WL 5473730, at *3 (W.D. Okla. Nov. 14, 2017) (rejecting allegation that the ALJ ignored the physician's opinion because the physician did not articulate any functional limitations).

Next, as to Plaintiff's argument that the ALJ failed to discuss Dr. Williams' findings regarding pain, Ms. Turner is wrong. The ALJ specifically discussed Dr. Williams' findings regarding Plaintiff's chronic pain syndrome and knee and back pain, *see* TR. 21, but the ALJ owed no further duty of evaluating the evidence, as Dr. Williams did not relate the

---

[6]  *See* TR. 21.

pain to any particular functional limitations. *See supra*. Plaintiff alleges that the ALJ "failed to discuss Claimant's pain impacts and failed to include appropriate limitations in her hypothetical question and decisional residual functional capacity." (ECF No. 22:8-9). But Ms. Turner herself fails to argue specific "pain impacts" or how, otherwise, her pain had resulted in functional limitations worthy of inclusion in the RFC.

### Dr. Simmons

Dr. Simmons performed a consultative psychological examination of Ms. Turner and provided the following summary:

> Carolyn's cognitive abilities appeared to be in the average or low average range. She appeared depressed and she continues to struggle with her son's death. She was likely to have PTSD prior to her son's death due to her childhood experience of being set on fire and hospitalized for months. She avoids being around people except at church. She does not sleep well which in turn affects her depression and her energy level. It is perceived that she would have difficulty being a consistent and persistent employee. Her status appears to be much the same if not somewhat lowered as when she was previously evaluated in 2013. Carolyn needs to continue in therapy. Carolyn has the ability to oversee any cash benefits that may be awarded to her.

(TR. 600).

The ALJ summarized Dr. Simmons' findings, but rejected her opinion that Plaintiff would have difficulty being a consistent and persistent employee, as "not supported by or in her evaluation, and not consistent with the medical evidence of record." (TR. 23). According to Ms. Turner, the ALJ erred in erred in failing to "recognize that Dr. Simmons's assessment of Claimant's moderate concentration problems, moderate social problems, and co-occurring fatigue and pain limitations would result in moderate problems with being consistent and persistent." (ECF No. 22:10). Ms. Turner contends that "individuals

with moderate limitations of social functioning and concentration, persistence, or pace can have difficulty maintaining a job" and that "the evidence precludes the jobs the ALJ found at Steps 4 and 5" based on her limitations in social interaction, concentration persistence, and pace, and back impairments, including pain. (ECF No. 22:10). For three reasons, the Court rejects Plaintiff's argument.

First, contrary to Plaintiff's statement, Dr. Simmons did not opine that Ms. Turner suffered from "moderate social problems." *See* TR. 595-601. In 2013 and 2014, Ms. Turner was documented to have Global Assessment of Functioning (GAF) scores[7] of 48 and 54. *See* TR. 405, 542. To be sure, these scores can indicate "serious" (48) or "moderate" (54) symptoms related to psychological, social, occupational functioning. *See Diagnostic and Statistical Manual of Mental Disorders* (DSM–V) (5th ed.). However, Ms. Turner apparently equates Dr. Simmons' statement that Plaintiff's "status appears to be much the same if not somewhat lowered" with a finding that Plaintiff's GAF scores "are much the same if not somewhat lowered" which would, turn, result in a finding that she suffered from "moderate social problems." *See* ECF No. 22:9-10. But Dr. Simmons did not assess Plaintiff's GAF during her 2018 evaluation and the Court will not make the presumption urged by Ms. Turner to reach a conclusion that is not apparent from the evidence.

Second, Dr. Simmons did not opine that Plaintiff suffered from "moderate concentration problems . . . and co-occurring fatigue and pain limitations [which] would

---

[7] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lee v. Barnhart*, 117 F. App'x 674, 678, 2004 WL 2810224, at *3 (10th Cir. 2004).

result in moderate problems with being consistent and persistent." *See* TR. 595-601. Dr. Simmons did list a diagnostic impression which included Plaintiff's subjective complaints of pain, but nowhere in Dr. Simmons report did the psychologist discuss Plaintiff's issues with fatigue or concentration. *See* TR. 595-601.

Finally, Dr. Simmons did not opine that Plaintiff suffered from "moderate problems with being consistent or persistent." (ECF No. 22:10). While Dr. Simmons did conclude that Plaintiff "would have difficultly being a consistent and persistent employee," the ALJ rejected the opinion, as "not supported by or in her evaluation and . . . not consistent with the medical evidence of record." (TR. 23). Ms. Turner does not challenge the sufficiency of the ALJ's rationale, but instead appears only to argue that the evidence should be re-weighed to credit Dr. Simmons opinion to reach a finding of disability. But the Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d at 1201 (internal quotation marks omitted). The ALJ discharged her legal duty to evaluate Dr. Simmons' opinion, which was all she was required to do.

### C.    **Function-by-Function Analysis**

At what appears to be an afterthought to her "step two" argument, Plaintiff states:

Social Security Rulings ("SSRs") are binding on the Social Security Administration ("SSA"); courts defer to SSRs as they are interpretation of Agency regulations and foundational statutes. According to SSR 96-8p, the ALJ must perform a function-by-function assessment to see if the claimant can do her past relevant work as actually performed. Failure to discuss each function separately per SSR 96-8p guidance is erroneous. The ALJ's departure from the rules is reversible error.

(ECF No. 22:11-12) (internal citations omitted). The Court liberally construes this passage as Plaintiff's attempt to argue that the ALJ committed reversible error by failing to perform a function-by-function analysis of Ms. Turner's abilities prior to determining, at step four, that she could perform her past relevant work as a kitchen helper as she had actually performed it. But beyond the bare statements outlining the law, Plaintiff presents no substantive argument. As a result, the Court should conclude that Ms. Turner has waived any argument related to the ALJ's failure to follow SSR 96-8p regarding a function-by-function analysis. *See Keyes–Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those contentions that have been adequately briefed for review."); *Franklin Sav. Corp. v. U.S.,* 180 F.3d 1124, 1128 n. 6 (10th Cir. 1999) (arguments presented superficially are waived); *Brandenberg v. Saul*, 2020 WL 3832987, at *5 (D.N.M. July 7, 2020) (finding no reversible error based on the ALJ's failure to perform a function-by-function analysis because the plaintiff "failed to explain how the ALJ's failure to perform a function-by-function assessment  harmed her."); *Murphy  v. Astrue*, 2011 WL 2144610, at * 6 (W.D. Okla. May 14, 2011) (rejecting allegation of error for "failure to develop the factual—and legal—bases for [the] argument.").

### D.    Plaintiff's Lack of Proper Medical Care, Loss of Housing, and Inability to Afford Treatment or Medication

Plaintiff states: "The ALJ also committed legal error by failing to recognize the impacts on Claimant's disabling conditions caused by lack of proper medical care, loss of housing, and a poor ability to afford more than conservative treatment or, at times, necessary medication." (ECF No. 22:12). Plaintiff then cites cases which discuss: (1) the fact that the amount of treatment received by a claimant should not play a role in

determining whether an impairment was severe and (2) an ALJ's duty when relying on Plaintiff's failure to pursue treatment as a basis for a finding of non-credibility. (ECF No. 22:12). Ms. Turner then states: "As a result, the ALJ's failure to apply the correct legal standards or to provide the Court with a sufficient basis to determine that appropriate legal principles have been followed, is grounds for reversal even independent of the substantial evidence standard." (ECF No. 22:12).

At best, the Court finds Plaintiff's argument underdeveloped and disjointed. Plaintiff argues error through the ALJ's failure "to recognize the impacts on Claimant's disabling conditions caused by lack of proper medical care, loss of housing, and a poor ability to afford more than conservative treatment or, at times, necessary medication." (ECF No. 22:12). But Ms. Turner fails to explain what, exactly, those impacts are. In addition, to the extent Ms. Turner argues error at step two, the Court has previously determined that any error at step two is harmless. *See supra*. Finally, to the extent that Plaintiff believes that the ALJ erroneously relied on her noncompliance with medication as a basis to discount her credibility,[8] Plaintiff has cited case law, but has only given one parenthetical explanation which could arguably apply to the stated proposition. *See* ECF No. 22:12 (Plaintiff's reliance on *Willis v. Berryhill*, 2017 WL 1011440 *6 (E.D.N.C. 2017)). The Court finds that *Willis* is not controlling here.

### E.    Medication Side Effects

Ms. Turner alleges the ALJ erred by failing to determine "how medication side effects would have impacted Claimant's fatigue and mental health[.]" (ECF No. 22:9). Six

---

[8] *See* TR. 22.

pages prior to this statement, Ms. Turner listed side effects of her medications which included frequent bathroom trips, bad dreams, problems with concentration, lightheadedness, and impact on her taste. *See* ECF No. 22:3, citing TR. at 379, 624.[9] Again, the Court finds the argument disjointed and undeveloped. To the extent Ms. Turner is alleging that her medications caused her to suffer fatigue and mental health issues, the Court finds: (1) fatigue was never mentioned as a side effect in any of the evidence cited by Ms. Turner, and (2) the ALJ specifically stated he had considered the evidence related to Plaintiff's alleged complaints regarding medication side effects. *See* TR. 15. This was all that was required from the ALJ, especially in light of Plaintiff's failure to further develop her argument. *See Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996).[10]

## VI.   PLAINTIFF'S SECOND PROPOSITION

In Plaintiff's second proposition of error, she alleges a violation of Due Process through the ALJ's: (1) bias against her and (2) improper use of prior medical records from an earlier adjudicated claim. (ECF No. 22:13-14). The Court disagrees.

At the hearing, the ALJ asked Ms. Turner if there was anyone in her family that was disabled and receiving disability benefits. (TR. 40). Plaintiff replied that two of her sisters received disability benefits. (TR. 40). Later in the hearing, the following exchange occurred:

---

[9]  Nowhere in the cited records does Plaintiff report that her medications had affected her smell. *See* TR. 379, 624.

[10] The Court also notes that at the hearing, the ALJ specifically asked Ms. Turner if her medications caused her to suffer any side effects. (TR. 50). Plaintiff stated: "Not that I'm aware of, I haven't had any." (TR. 50).

> ALJ:        Well, tell me what's wrong with you that prevents you from
>             working. You look healthy sitting across from me.
>
> PLAINTIFF:  Yeah.
>
> ALJ:        So, I can't see - -
>
> PLAINTIFF:  Yeah.
>
> ALJ:        - -what's wrong with you, but it's kind of like we watch people
>             parking in those handicapped- -
>
> PLAINTIFF:  Oh, yeah.
>
> ALJ:        - - zones and then they –
>
> PLAINTIFF:  Yeah.
>
> ALJ:        - - turn right around and run into the grocery store. So, tell
>             me what's wrong with you that prevents you from- -
>
> PLAINTIFF:  Oh - -
>
> ALJ:        - - working.

(TR. 43-44). According to Ms. Turner, the aforementioned questioning demonstrated

harmful bias against her in violation of Due Process by:

> Provid[ing] a characterization that disabled people commit fraud, physically
> identif[ying] Claimant as not appearing disabled, and then ask[ing] about
> [Plaintiff's] family members that may be receiving disability benefits.

(ECF No. 22:13). The Court disagrees.

Due process guarantees a hearing before a fair and impartial tribunal. *Withrow v.

Larkin,* 421 U.S. 35, 46 (1975); *Harline v. Drug Enforcement Administration,* 148 F.3d

1199, 1203 (10th Cir. 1998). This mandate applies to administrative agencies which

adjudicate as well as to courts. *Gibson v. Berryhill*, 411 U.S. 564, 579 (1973). Indeed, the

Commissioner's own regulations ensure that "[a]n administrative law judge shall not

16

conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. Nevertheless, an administrative law judge enjoys a presumption of honesty and integrity. *Withrow,* 421 U.S. at 47. Plaintiff bears the burden of rebutting that presumption by demonstrating "some substantial countervailing reason to conclude that [the ALJ] is actually biased with respect to factual issues being adjudicated." *Mangels v. Pena,* 789 F.2d 836, 838 (10th Cir. 1986).

The Court finds that Plaintiff has failed to rebut the presumption of honesty and integrity in this case. The record demonstrates the ALJ inquired about Plaintiff's family members who might be receiving disability benefits. And to be sure, the ALJ made a statement that Ms. Turner "look[ed] healthy." *See supra*. Plaintiff apparently believes that through these questions and comments, the ALJ had exhibited bias against her, in violation of Due Process. The Court finds no merit to this argument because:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

*Liteky v. United States,* 510 U.S. 540, 555–556 (1994) (emphasis in original). Nothing in the record supports a conclusion that the ALJ exhibited "such a high degree of favoritism or antagonism as to make fair judgment impossible." *Id.* Furthermore, the Tenth Circuit Court of Appeals has found no bias in circumstances, as in the present case, where

"plaintiff received a full opportunity to develop the record." *Puckett v. Chater*, 100 F.3d 730, 734 (10th Cir. 1996). Remand is not warranted on this basis.

Ms. Turner also alleges:

> In the determination, the ALJ used evidence from prior closed applications in legal error to allude that Claimant's application is fraudulent because of her attorney's work to get her into mental health care (T 541) and because she has been non-compliant with medications (T 22).

(ECF No. 22:13). According to Plaintiff, the ALJ's "recitation of the prior evidence constituted a possible *de facto* reopening of the prior claim" in violation of Due Process. (ECF No. 22:14). The Court rejects this argument.

In the decision, the ALJ did cite evidence from 2013 which showed that Plaintiff "only kept two appointments before dropping out of services . . . [and] she had a pattern of noncompliant treatment and was very focused on obtaining Social Security Disability." (TR. 18). However, the ALJ specifically stated that this evidence had been "previously considered in prior decision(s)" and the issue had been "previously adjudicated in prior decision(s)" and that "[c]onsideration has not been given to reopening the previous applications[.]" (TR. 12, 18). It is apparent to the Court that the ALJ did not rely on the evidence from 2013 in formulating her decision, or otherwise re-open a previously adjudicated claim.

## VII.   PLAINTIFF'S THIRD PROPOSITION

In her third proposition, Ms. Turner argues that the ALJ failed to make a proper "consistency" analysis. (ECF No. 22:14). According to Plaintiff, the ALJ:

> engaged in impermissible miscasting of evidence and picking and choosing evidence to support the unfavorable consistency determination while minimizing or ignoring evidence favorable to Claimant. The ALJ

mischaracterized Claimant's activities of daily living as demonstrating her ability to work full-time on a regular and continuing basis.

(ECF No. 22:14-15) (internal citations omitted). The Court rejects Plaintiff's argument.

## A.     ALJ's Duty to Evaluate Plaintiff's Subjective Allegations

Social Security Ruling 16-3p provides a two-step framework for the ALJ to consider a claimant's symptoms and determine the extent to which the symptoms are consistent with the evidence in the record. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). First, the ALJ must make a threshold determination regarding "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." *Id.* at *2. Second, the ALJ will evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they limit an individual's ability to perform work-related activities. *Id.* At step two, the ALJ will examine the objective medical evidence, the claimant's statements regarding her symptoms, information from medical sources, and "any other relevant evidence" in the record. *Id.* at *4. SSR 16-3p also directs the ALJ to consider the claimant's daily activities as one of the factors in evaluating the intensity, persistence, and limiting effects of the claimant's symptoms. *Id.*  at *7. Finally, in evaluating a claimant's subjective statements, the ALJ must "provide specific reasons for the weight given to the [claimant's] symptoms, [which are] consistent with and supported by the evidence, and [ ] clearly articulated" for purposes of any subsequent review. *Id.*, at *9.

**B.    No Error in the ALJ's Consideration of Plaintiff's Subjective Allegations**

In formulating the RFC, the ALJ stated that she had considered Ms. Turner's subjective allegations. (TR. 17). After identifying the two-step framework under SSR 16-3p, the ALJ stated:

> I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(TR. 18). In support of this determination, the ALJ stated:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. At one point or another in the record, either in forms completed in connection with the application and on appeal, medical records or reports, or in the claimant's testimony, the claimant reported that she cares for her own personal needs, sweeps her wooden floors and keeps her house tidy, goes out to the mission or friendship feast to eat.

(TR. 18). According to Ms. Turner, the ALJ "mischaracterized Claimant's activities of daily living as demonstrating her ability to work full-time on a regular and continuing basis." (ECF No. 22:15). The Court disagrees. First, Plaintiff fails to explain how the ALJ "mischaracterized" her activities of daily living; the Court finds that the record supports the ALJ's findings. *See* TR. 48, 50, 51. As stated, the ALJ was entitled to rely on Plaintiff's activities of daily living in assessing the consistency of her subjective allegations. *See supra*. Contrary to Plaintiff's argument, the ALJ did not rely on Plaintiff's activities of daily living "as demonstrating her ability to work full-time on a regular and continuing basis,"

but instead as one factor in evaluating her subjective allegations. Remand is not warranted on this basis.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on July 30, 2021.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE